```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOHN R. DURSO, JOSEPH FONTANO,
TERI NOBLE, DEBRA BOLLBACH,
NEIL GONZALVO, JON GREENFIELD,
JOHN CATSIMATIDIS, ANGELO AVENA,
MORTON SLOAN, and JACOB DIMANT, M.D.,
as Trustees and Fiduciaries
of the LOCAL 338 RETIREMENT FUND,
                                            MEMORANDUM & ORDER
                 Plaintiffs,                17-CV-6754(JS)(ARL)

       -against-

BARSYL SUPERMARKETS INC.,
ALMONTE BEACH FOOD CORP.,
ALMONTE REALTY LLC,
DAYMONTE REALTY LLC, and
ALMONTE MILL FOOD CORP.,

                 Defendants.
----------------------------------X
APPEARANCES
For Plaintiffs:     William Anspach, Esq.
                    Paris N. Nicholls, Esq.
                    Friedman & Anspach
                    1500 Broadway, Suite 2300
                    New York, New York 10036

For Defendants:     Douglas P. Catalano, Esq.
                    Stephen P. Pischl, Esq.
                    Clifton Budd & DeMaria, LLP
                    350 Fifth Avenue, Suite 6110
                    New York, New York 10103
```

SEYBERT, District Judge:

Plaintiffs John R. Durso, Joseph Fontano, Teri Noble, Debra Bollbach, Neil Gonzalvo, Jon Greenfield, John Catsimatidis, Angelo Avena, Morton Sloan, and Jacob Dimant, M.D. (collectively, the "Plaintiffs" or "Trustees"), as trustees and fiduciaries of the Local 338 Retirement Fund (the "Fund"), commenced this action

against defendants Barsyl Supermarkets, Inc. ("Barsyl"), Almonte Beach Food Corp. ("Almonte Beach"), Almonte Realty LLC ("Almonte Realty"), Daymonte Realty LLC ("Daymonte"), and Almonte Mill Food Corp. ("Almonte Mill") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001-1461. Before the Court is Plaintiffs' unopposed motion for summary judgment against defendants Barsyl and Almonte Beach (together, the "Defendants"). (Mot., ECF No. 34; Pls. Br., ECF No. 37.) For the reasons that follow, the motion is GRANTED.

## BACKGROUND[1]

The Fund is an employee benefit plan and multiemployer plan within the meaning of ERISA §§ 3(3) and (37), 29 U.S.C. §§ 1002(3) and (37) and 1301(a)(3). (Pls. 56.1 Stmt. ¶ 2.) The Fund was created to provide members of Local 338 RWDSU/UFCW (the "Union") with retirement benefits and is governed by the Reaffirmation and Restatement of Agreement and Declaration of

---

[1] The facts are drawn from Plaintiffs' Local Civil Rule 56.1 Statement ("Pls. 56.1 Stmt.") and admissible record evidence, including the Ismael Torres Affidavit and the William Anspach Declaration, along with the exhibits attached thereto. (Pls. 56.1 Stmt., ECF No. 38; Torres Aff., ECF No. 35; Anspach Decl., ECF No. 36.) Because Defendants have not responded to the motion, "the factual allegations set forth in Plaintiffs' statement of material facts pursuant to Local Civil Rule 56.1, to the extent they are properly supported pursuant to Fed. R. Civ. P. 56(c), are deemed admitted." Durso v. Almonte Beach Food Corp., No. 17-CV-6673, 2021 WL 493398, at *1 n.3 (E.D.N.Y. Feb. 10, 2021) (collecting authorities).

Trust (the "Trust Agreement"). (Id. ¶¶ 1, 14; Torres Aff. ¶¶ 2-3; Trust Agmt., Ex. A, ECF No. 35-1, attached to Torres Aff.)

Defendants were signatories to a series of collective bargaining agreements ("CBAs") with the Union under which they were required to make contributions to the Fund. (Pls. 56.1 Stmt. ¶¶ 4-5.) In 2013, the Fund determined that Barsyl effected a complete withdrawal from the Fund within the meaning of ERISA § 4203(a) and Article VIII of the Trust Agreement. (Id. ¶ 21.) In May 2015, the Fund determined that Almonte Beach effected a complete withdrawal from the Fund within the meaning of ERISA § 4203(a) and Article VIII of the Trust Agreement. (Id. ¶ 6.) On May 13, 2016, the Fund notified Barsyl that it had effected a complete withdrawal from the Fund and incurred $143,182.00 in withdrawal liability. (Id. ¶ 22.) Likewise, on September 29, 2016, the Fund notified Almonte Beach that it effected a complete withdrawal and that it incurred $140,418.00 in withdrawal liability. (Id. ¶ 7.) Neither Barsyl nor Almonte Beach made payments to the Fund and, by letters dated August 4, 2016 and May 22, 2017, respectively, the Trustees provided Barsyl and Almonte Beach sixty days to cure their default. (Id. ¶¶ 23-25, 8-10.) Barsyl and Almonte Beach did not make payments towards their withdrawal liability, did not contest the Trustees' findings, and did not challenge the Fund's withdrawal liability assessments. (Id. ¶¶ 12-13, 27-28.)

3

PROCEDURAL HISTORY

Plaintiffs commenced this action on November 17, 2017 pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, seeking to recover withdrawal liability from Defendants pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), and Section 515 of ERISA, 29 U.S.C. § 1145, plus interest and additional damages.  On November 15, 2019, the parties appeared for a pre-motion conference to discuss Plaintiffs' anticipated motion for summary judgment. (Min. Entry, ECF No. 31.)  The Court continued the conference to December 19, 2019, when the parties advised that they reached a settlement. (See ECF No. 32.)  After many adjournments and failed settlement attempts, on October 27, 2020, the Court reinstated Plaintiffs' summary judgment motion, which was initially filed on March 3, 2020. (Pls. Ltr., ECF No. 49; Oct. 27, 2020 Elec. Order.)

ANALYSIS

I.   Legal Standards

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing that there are no genuine issues of material fact.  Gallo v. Prudential Residential Servs., L.P., 22

4

F.3d 1219, 1223 (2d Cir. 1994). "[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quotation marks and citation omitted). "An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Id. (quotation marks and citations omitted).

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). The Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

5

II. Discussion

    A. Withdrawal Liability - Statutory Framework

Plaintiffs seek summary judgment on their withdrawal liability claims against Defendants Barsyl and Almonte Beach. Under ERISA, every employer who enters into a CBA must make contributions "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Pursuant to the MPPAA, "withdrawal liability arises when an employer stops contributing to a multiemployer pension plan and is designed to 'relieve the funding burden on remaining employers by having the withdrawing employer pay its proportionate share of the plan's unvested benefits.'" Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. R & C Transit, Inc., No. 16-CV-2481, 2019 WL 2436144, at *4 (E.D.N.Y. Jan. 15, 2019) (quoting ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881 (2d Cir. 1988)), report and recommendation adopted by 2019 WL 2436115 (E.D.N.Y. Feb. 14, 2019). The MPPAA also provides that an "employer withdraws from a plan when it permanently ceases to have operations covered by a CBA or permanently ceases to have obligations to contribute to the plan." Id. (citing 29 U.S.C. § 1383(a)). Upon withdrawal, a pension fund must send a notice and demand for payment for an employer's withdrawal liability "as soon as practicable" after an employer's complete withdrawal. Id. (citing 29 U.S.C. § 1399(b)(1)). "Payments are set at a level that

6

approximates the periodic contributions the employer had made before withdrawing from the plan." Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 196-97 (1997) (citing 29 U.S.C. § 1399(c)(1)(C)). If the employer fails to make any scheduled payment, it has sixty days to cure its nonpayment. 29 U.S.C. § 1399(c)(2). If the employer fails to cure, the pension fund may declare the employer in default, accelerate the payments, and demand the entire unpaid amount of the withdrawal liability. 29 U.S.C. § 1399(c)(5).

Once an employer receives a notice and demand for payment from a pension fund, the employer may dispute the amount of the withdrawal liability or assert defenses. 29 U.S.C. § 1399(b)(2)(A). Where a dispute exists, either party may initiate arbitration within specified time periods. 29 U.S.C. § 1401. If the employer does not initiate arbitration, it waives its right to dispute the amount of its liability and its right to assert defenses. 29 U.S.C. § 1401(b)(1). The pension fund may then initiate an action in state or federal court to collect the unpaid withdrawal liability from the employer. 29 U.S.C. § 1451(c).

B.   Defendants Are Liable For Withdrawal Liability

Here, Plaintiffs seek withdrawal liability payments from Defendants. To prevail on a claim for withdrawal liability, Plaintiffs must establish that: (1) each "defendant constituted an 'employer' under the MPPAA prior to withdrawal; (2) defendant[s]

7

received notice of the withdrawal liability assessment against [them]; and (3) defendant[s] failed to initiate arbitration as required by the MPPAA." Finkel v. Athena Light & Power LLC, No. 14-CV-3585, 2016 WL 4742279, at *6 (E.D.N.Y. Sept. 11, 2016) (citation omitted).

The Fund has satisfied each of these elements. First, there is no dispute that Defendants were employers under the MPPAA prior to their withdrawal. Indeed, both Defendants were parties to CBAs with the Union, and were obligated to make contributions to the Fund. (Pls. 56.1 Stmt. ¶¶ 4-5.) Second, the Fund notified both Defendants of their withdrawal liability assessments by certified mail on two occasions. See Trustees of Nat'l Ret. Fund v. Le Perigord, Inc., No. 16-CV-6921, 2018 WL 1747257, at *2-3 (S.D.N.Y. Apr. 9, 2018). Indeed, the Fund notified Barsyl of its withdrawal liability, and the right to cure its default, on May 13, 2016 and August 4, 2016. (Pls. 56.1 Stmt. ¶¶ 22, 25.) Similarly, the Fund notified Almonte Beach of its withdrawal liability, and the right to cure its default, on September 29, 2016 and May 22, 2017. (Id. ¶¶ 7, 10.) Third, and finally, Defendants never requested to review of the Trustee's assessments or initiated arbitration regarding their withdrawal liability. (Id. ¶¶ 13, 28.) It follows that Defendants' "ability to contest the amount of withdrawal liability due and owning is foreclosed."

8

Div. 1181 Amalgamated Transit, 2019 WL 2436144, at *5 (collecting cases).

Accordingly, Plaintiffs' motion for summary judgment on their claims for withdrawal liability against Defendants is GRANTED. Plaintiffs are entitled to $143,182.00 in withdrawal liability from Barsyl; and, $140,418.00 in withdrawal liability from Almonte Beach.

### C. Interest and Liquidated Damages

The Court next considers Plaintiffs' request for interest on Defendants' withdrawal liability and for liquidated damages.[2] (Pls. Br. at 9-11.) "In any action to collect withdrawal liability 'in which a judgment in favor of the plan is awarded, the court shall award the plan,' in addition to the unpaid withdrawal liability, reasonable attorneys' fees and costs, interest, and liquidated damages." UNITE Nat. Ret. Fund v. Veranda Mktg. Co., No. 04-CV-9869, 2009 WL 2025163, at *4 (S.D.N.Y. July 13, 2009) (quoting 29 U.S.C. §§ 1132(g)(2)(B)). This damages award is a "mandatory remedy." Id. (citation omitted).

### 1. Prejudgment Interest

Plaintiffs first seek prejudgment interest on the withdrawal liability amounts pursuant to the Trust Agreement and

---

[2] Plaintiffs have reserved the right to submit a separate application for attorneys' fees in the event the motion for summary judgment is granted. (Pls. Br. at 11.)

9

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), which mandates an award of interest at the rate established by the pension plan. (Pls. Br. at 10.) The Trust Agreement provides for the payment of interest at a rate of 1½ percent per month, or 18 percent per year, from the date payment was due. (Pls. 56.1 Stmt. ¶¶ 15-16, 30-31; Trust Agmt., Amendment No. 4, at ECF p. 39.) Interest has accrued from July 1, 2016 for Barsyl (Pls. 56.1 Stmt. ¶ 23), and from October 1, 2016 for Almonte Beach (id. ¶ 8).

For Barsyl, interest calculated at 1½ percent per month on the $143,182.00 withdrawal liability amounts to $2,147.73 per month. The time period from July 1, 2016 through March 1, 2020 encompasses forty-four months. Therefore, Plaintiffs are entitled to prejudgment interest from Barsyl in an amount of $94,500.12 with additional interest accruing from March 1, 2020 through the month of payment at a rate of $2,147.73 per month.

For Almonte Beach, interest calculated at 1½ percent per month on the $140,418.00 withdrawal liability amounts to $2,106.27 per month. The time period from October 1, 2016 through March 1, 2020 encompasses forty-one months. Therefore, Plaintiffs are entitled to prejudgment interest from Almonte Beach in an amount of $86,357.07, with additional interest accruing from March 1, 2020 through the month of payment at a rate of $2,106.27 per month.

      2.   <u>Liquidated Damages</u>

Plaintiffs also request, and are entitled to, liquidated damages. (Pls. Br. at 10-11.) Under the Trust Agreement and Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to damages in an amount equal to the greater of: (i) interest on the unpaid contributions, or (ii) liquidated damages in the form of twenty percent of the unpaid contributions. (Pls. 56.1 Stmt. ¶¶ 18, 33; Trust Agmt. at ECF pp. 19-20, Article VII(5)(d)); 29 U.S.C. § 1132(g)(2)(C)(i) and (ii); <u>see also</u> <u>Finkel</u>, 2016 WL 4742279, at *9.

Here, Plaintiffs are correct that the interest calculated above is greater than twenty percent of the unpaid withdrawal liability for Barsyl, which twenty percent amounts to $28,636.40, and for Almonte Beach, which twenty percent amounts to $28,083.60. Accordingly, for Barsyl, Plaintiffs are entitled to an award of liquidated damages equal to $94,500.12, in addition to $2,147.73 per month from March 1, 2020 through the month of payment. For Almonte Beach, Plaintiffs are entitled to an award of liquidated damages equal to $86,357.07, in addition to $2,106.27 per month from March 1, 2020 through the month of payment.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Plaintiffs' unopposed motion for summary judgment (ECF No. 34) is GRANTED and Plaintiffs are entitled to judgment against Defendants Barsyl Supermarkets, Inc. and Almonte Beach Food Corp.; and

**IT IS FURTHER ORDERED** that Plaintiffs are awarded damages from Defendants as follows:

(1) As from Barsyl:

(a) $143,182.00 in withdrawal liability;

(b) $94,500.12 in prejudgment interest, with additional interest accruing from March 1, 2020 through the month of payment at a monthly rate of $2,147.73; and

(c) $94,500.12 in liquidated damages, in addition to $2,147.73 per month from March 1, 2020 through the month of payment; and

(2) As from Almonte Beach:

(a) $140,418.00 in withdrawal liability;

(b) $86,357.07 in prejudgment interest, with additional interest accruing from March 1, 2020 through the month of payment at a monthly rate of $2,106.27; and

(c) $86,357.07 liquidated damages, in addition to $2,106.27 per month from March 1, 2020 through the month of payment; and

**IT IS FURTHER ORDERED** that, within thirty (30) days from the date of this Order, Plaintiffs may file a motion to recover attorneys' fees and costs incurred in this action, pursuant to Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E); and

**IT IS FURTHER ORDERED** that, within thirty (30) days from the date of this Order, Plaintiffs shall file a status report informing the Court how they intend to proceed against defendants Almonte Realty, Daymonte, and Almonte Mill.

SO ORDERED.

/s/   JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  16 , 2021
       Central Islip, New York